FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★    JUL 1 8 2013    ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GREAT ROCK GOLF 2006, LLC,
JBGR, LLC, ELLIOT WR GOLF, LLC,
INSURENEWYORK AGENCY LLC,
HURNEY WR GOLF, LLC, DEMPSEY WR
GOLF, LLC and WALSH WR GOLF, LLC

                    Plaintiffs,

-against-

TOWN OF RIVERHEAD and TOWN OF
RIVERHEAD PLANNING BOARD,

                    Defendants.
------------------------------------------------------------X

12-cv-3585 (SJF)(WDW)

**OPINION & ORDER**

FEUERSTEIN, District Judge:

On July 19, 2012, plaintiffs Great Rock Golf 2006, LLC, JBGR, LLC, Elliot WR Golf, LLC, Insurenewyork Agency LLC, Hurney WR Golf, LLC, Dempsey WR Golf, LLC and Walsh WR Golf, LLC (collectively, "plaintiffs") commenced this action against defendants Town of Riverhead ("the Town") and Town of Riverhead Planning Board ("the Planning Board") (collectively, "defendants") pursuant to, *inter alia*, 42 U.S.C. §§ 1983 and 1985, alleging violations of their constitutional rights. Pending before the Court is defendants' motion to strike certain paragraphs of the complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is denied.

1

I. BACKGROUND

A. Factual Background[1]

In 2006, plaintiffs purchased an approximately one hundred forty (140)-acre parcel of property located at 141 Fairway Drive, Wading River, New York ("the subject premises"), as an improved eighteen (18)-hole golf course with a clubhouse and storage accessory buildings. (Compl., ¶ 19). Beginning in 2006, and at all relevant times thereafter, plaintiffs were the owners and operators of the "Great Rock Golf Course" at the subject premises. (Id.)

On or about April 4, 1995, the Town adopted a resolution approving the application of the former owners of the subject premises "to change the zoning map for the Subject Premises to a Recreational Overlay District in conjunction with the existing Residential 'A' zoning district." (Compl., ¶ 20). On or about January 16, 1996, the Town approved the former owners' site plan application, permitting the construction of an eighteen (18)-hole golf course, with attendant clubhouse, maintenance area and other site improvements, on the subject premises. (Id.) The site plan was amended as of January 7, 1997 based upon a new grading plan. (Id.)

The Town was re-zoned in 2004. (Compl., ¶ 49).

On or about October 26, 2006, plaintiffs submitted an application to the Planning Board pursuant to Section 108-131 of the Riverhead Zoning Code, together with a twelve thousand dollar ($12,000.00) application fee, seeking approval of a site plan application for the subject premises in order to: (a) build fifty-four (54) Senior Golf Villas as accessory uses to the permitted golf-course use; (b) expand the clubhouse; and (c) add storage. (Compl., ¶ 21).

Over the ensuing two (2)-year period, plaintiffs' site plan application "was amended to

---

[1] The facts are taken from the complaint and do not constitute findings of fact by the Court.

2

reflect and incorporate the changes as recommended" by the Planning Board. (Compl., ¶ 22). On September 19, 2007, plaintiffs submitted a yield map for the subject premises "as requested by the Planning Board." (Id.) Also in 2007, plaintiffs provided the Planning Board's counsel, at his request, with a title search of the subject premises "depicting the state of ownership, recorded easements, covenants and restrictions, affecting it," which "did not reveal any recorded covenants and restrictions on further development of the Subject Premises." (Compl., ¶ 23).

In 2007, the Planning Board also considered plaintiffs' "site-plan [sic] application for an amended site-plan [sic], authorizing the installation of a temporary, 4,200 square foot tent, to be standing for no more than 180 days per year, and used for golf-course related events during the golf season." (Compl., ¶ 24). Although final review of plaintiffs' application "was stayed pending a determination by the Planning Board Counsel and Town Attorney that the Plaintiffs' golf course was a permitted use as Recreational District Overlay Zone, and not a preexisting legal non-conforming use in the then existing RB-80 (2 acre) residential district, the expansion of which would require a special permit from the Town Board," on July 5, 2007, the Planning Board approved plaintiffs' application for a temporary tent without requiring a special permit following a determination that plaintiffs' golf course was a permitted use. (Id.)

On or about May 16, 2008, the Planning Board's counsel determined "that a Special Permit for an expansion of a non-conforming use was not required because the golf course was determined to be a permitted use in an overlay zone." (Compl., ¶ 55).

On July 1, 2008, "in direct response to the Plaintiffs' argument that the Town's 2004 Master Plan had not eliminated the Subject Premises' Recreational Zoning Use District classification, the Town reacted by proposing * * * a Resolution to eliminate the District."

(Compl., ¶ 49). On July 15, 2008, "for no apparent reason other than [with the intent to impair and defeat the Plaintiffs' property rights]," the Planning Board repealed the Recreational Use District, Article XXV of the Town's Zoning Code. (Compl., ¶ 25). According to plaintiffs, the resolution "did not change the Subject Premises' overlay zoning classification [as a Recreational Overlay Zone], since the required procedures for affecting the Zoning map was [sic] not followed * * *." (Compl., ¶ 49).

On October 31, 2008, plaintiffs filed an amended site plan application, and paid an additional application fee of eleven thousand eight hundred eighty dollars ($11,880.00), seeking approval for seventy-eight (78) accessory Golf Villas, an expanded clubhouse and storage facilities. (Compl., ¶¶ 22, 25). Plaintiffs were to retain ownership of the Villas. (Compl., ¶ 25). According to plaintiffs, after they "had filed the application that refers to the Senior Golf Villas as accessory uses, the [Planning] Board for no substantive reason resolved to remove the aforesaid golf course sub-district from the [Town] Zoning Code." (Id.)

On April 30, 2009, plaintiffs filed "[a]n expanded, long-form Environmental Assessment Form ('EAF')." (Compl., ¶ 22).

On May 18, 2009, following "complaints of noise by neighbors relating to the use of the approved temporary tent," plaintiffs entered into a stipulation with the Planning Board ("the 2009 Stipulation") providing, *inter alia*, that plaintiffs' golf course was "'permitted. . . in an overlay zoning use district. . .'" and that the Planning Board "'will take action upon the application. . . .'" for clubhouse expansion." (Compl., ¶ 25). In addition, the 2009 Stipulation "requested that the proposal to expand the clubhouse and additional storage proceed separately from the proposal for the accessory use Golf Villas." (Id.) "Under the terms of the [2009] Stipulation, the Plaintiffs

4

waived their defenses against the Town's complaints against the Plaintiffs' use of their tent; agreed to the Town's processing their application for the accessory golf-villas independent of the clubhouse expansion; and paid a considerable fine." (Compl., ¶ 27). In addition, "[t]he parties agreed to a deadline of June 1, 2009, as the filing date for the Plaintiffs to submit their amended site-pan [sic] application and for the 62-day clock set by Town Law Section 274-a." (Id.) According to plaintiffs, "[t]he [2009] Stipulation specifically provided that if the Plaintiffs filed the amended site-plan [sic] application, * * * on or before June 1, 2009, the Plaintiffs could rely on the Planning Board's complying with the statutory 62-day deadline to review the application, as mandated by both state law and Town ordinance." (Id.) "The [2009] Stipulation further provided at Paragraph '4' that should the application be approved, the Plaintiffs were entitled to a building permit within 60 days of the submission." (Id.)

According to plaintiffs, "[a]s of June 1, 2009, [they] had responded to, and complied with, all recommended changes to their site-plan [sic] and application * * *, and the specified conditions of the Stipulation, * * *." (Compl., ¶ 28). By letter dated June 1, 2009, plaintiffs' counsel "urged the Planning Board to process the fully-submitted amended [site plan] application * * *." (Compl., ¶ 26). By letter dated June 30, 2009, plaintiffs' counsel "requested the Planning Board confirm receipt of the digital copy of the enhanced EAF, and an opportunity to appear at a work session to discuss whether there was any additional information needed." (Compl., ¶ 28). According to plaintiffs, they never received any response to the June 30, 2009 letter from the Planning Board. (Id.)

By letter dated September 15, 2009, Richard Hanley ("Hanley"), the Town's Planning Director, advised plaintiffs "that no review of, or decision on, its [sic] amended site-plan [sic]

5

application would be taken or made until the Plaintiffs had recorded certain covenants and restrictions, which the property developer, unrelated to the Plaintiffs, had allegedly failed to record in 1995." (Compl., ¶ 29). According to plaintiffs, it was subsequently confirmed "that said covenant had, in fact, been recorded." (Id.)

By letter dated October 1, 2009, plaintiffs' counsel advised the Town that it was violating Section 274-a(8) of the Town Law and Section 108-131(c)(2) of the Town Zoning Code by the Planning Board's failure to act on plaintiffs' site plan application by the sixty-two (62)-day deadline which "had been affirmed and accepted by the Town in the [2009] Stipulation to be June 1, 2009." (Compl., ¶ 30). Plaintiffs' counsel requested a response to the October 1, 2009 letter from the Planning Board "on or before its next scheduled hearing date of October 15, 2009." (Id.) According to plaintiffs, the Planning Board never responded to the October 1, 2009 letter. (Id.)

By letter dated January 27, 2010, Hanley advised plaintiffs, in effect, "that the accessory golf villa use was not recognized by the [Town] Code." (Compl., ¶ 31). By letter dated January 28, 2010, plaintiffs' counsel advised Hanley, *inter alia*, that he "objected to the Town's current complaint that a 'golf villa' was not a 'defined' use under the Code, since the Town had already approved such accessory uses for other golf courses within the Town, in particular, the Friars Head golf course * * *." (Id.)

According to plaintiffs, a Planning Report dated October 15, 2010 indicates: "As per a discussion with the Counsel for the Planning Board, the resolution approving the amended site plan, when prepared, will need to include a condition that a (5.6 acre area) be dedicated to the Town and require a covenant be filed." (Compl., ¶ 33). By letter dated November 15, 2010,

6

plaintiffs' counsel indicated, *inter alia*, that plaintiffs "would agree to dedicate the 5.6 acre parcel as a condition of the Town's issuance of a Certificate of Occupancy." (Compl., ¶ 34).

In a November 18, 2010 memorandum, the Planning Board raised additional issues, including "the condition that the Plaintiffs had to dedicate to the Town a 5.6-acre parcel, as already depicted on its [sic] most recently submitted site-plan [sic]" because the Planner had questioned "whether the condition of the dedication should be satisfied prior to the signing of the Mylars, rather than the issuance of the C.O." (Compl., ¶ 35). According to plaintiffs, "[t]he technical, engineering points raised [in the memorandum] were all addressed by [them]." (Id.)

By letter dated December 2, 2010, the Town's Planning Department "apprised the Plaintiffs of technical comments from the Town's Building and Engineering staff, all of which only recited the need for the project to conform with all State Building Code and Town design standards." (Compl., ¶ 36). According to plaintiffs, the Town's Engineering and Stormwater Management Department subsequently "provided additional comments to the Plaintiffs' plans, all of which * * * were addressed by the Plaintiffs." (Id.)

On December 16, 2010, the Planning Board held a work session concerning plaintiffs' site plan application for the "Amended Clubhouse Addition" to address concerns about the project by certain community groups, including a request that a Generic Environmental Review ("GER") of the project be performed to take into consideration new proposed commercial projects on Sound Avenue in Wading River. (Compl., ¶ 37).

By letter dated April 5, 2011, the Planning Board advised plaintiffs' counsel that, "contrary to its practice applied to all other similar applications, the proposed dedication of the parcel by the Plaintiffs to the Town would not be made a condition of any approval, but had to be

accomplished before the Planning Board * * * would conduct any further review of the application * * *." (Compl., ¶¶ 38, 51). By letter dated April 6, 2011, plaintiffs' counsel "presented the deed, with a legal description, previously reviewed by the Town, executed by the Plaintiffs." (Compl., ¶ 38). According to plaintiffs, the Town did not advise them that it had approved the proposed dedication deed until May 11, 2011 and did not return the executed recording documents until June 17, 2011. (Compl., ¶ 40). The deed was recorded on June 24, 2011. (Id.)

On May 3, 2011, the Suffolk County Department of Health Services issued its report indicating that the revised site plans submitted by plaintiffs were "OK," but that its approvals were "pending the receipt of Town's SEQRA Determination." (Compl., ¶ 41).

On or about May 17, 2011, the "Riverhead Neighborhood Preservation Coalition" ("RNPC") commenced an Article 78 proceeding against plaintiffs and the Town in state court ("the RNPC action") claiming that plaintiffs' "proposed expansion of an allegedly non-conforming use was prohibited," "in an attempt to prevent the Plaintiffs from gaining approval of its [sic] * * * site-plan [sic] application." (Compl., ¶ 42). According to plaintiffs, the Town's Supervisor publicly responded to the action by indicating that three (3) separate attorneys had advised the Town that plaintiffs' proposed expansion was not a non-conforming use. (Compl., ¶¶ 42, 52). Plaintiffs allege that during the pendency of the RNPC action, the Town refused to continue processing their site plan application on the ground that the filing of the RNPC action had effected a stay. (Compl., ¶ 43). By letter dated July 20, 2011, plaintiffs advised defendants "that there was no legal or statutory authority for their acquiescence to a claimed 'stay,'" and by letter dated July 28, 2011, plaintiffs demanded that "the Town act in accordance with its own

8

Town Code and approve the Plaintiffs' site-plan [sic]." (Compl., ¶¶ 43-44).

On or about September 1, 2011, the Town Attorney advised plaintiffs' counsel: (1) that "the Town had changed its opinion and concurred with the Plaintiffs' counsel's opinion that the filing of the [RNPC action] did not affect [sic] a stay;" and (2) that the Planning Board had scheduled an appearance on plaintiffs' site plan application at its next work session on September 13, 2011. (Compl., ¶ 45). According to plaintiffs, they attended the work session, "only to be told at that time that the Planning Department had been instructed not to process the Plaintiffs' pending site-plan [sic] application, so the Planning Board was refusing to consider the application at that time." (Id.) By letter dated September 15, 2011, the Town Attorney advised plaintiffs' counsel that "he had instructed the Planning Board that his 'office concurs with your Law Firm's opinion that an automatic stay * * * does not result due to the filing of the hybrid action-proceeding commenced in the State Supreme Court. There is no change in the legal advice being rendered. . .'" (Compl., ¶ 46).

By letter dated November 30, 2011, plaintiffs' counsel demanded that the Planning Board take action on plaintiffs' site plan application. (Compl., ¶ 47). Plaintiffs received no response to that letter. (Id.)

By letter dated March 8, 2012, plaintiffs again demanded the Planning Board's compliance "with the 2009 Stipulation, state law, and the Town Code." (Compl., ¶ 47).

By letter dated May 3, 2012, Hanley advised plaintiffs that the Town's Planning Department had declared: (1) "that the Plaintiffs' golf course was a 'non-conforming use, and any expansion required a special permit under Section 108-51 of the Town Code[;]'" and (2) "that the Planning Board did not have jurisdiction to review or approve the site-plan [sic]

9

application * * *." (Compl., ¶ 48). According to plaintiffs, "[t]he Planning Director's refusal to process the same site-plan [sic] application in 2012 directly conflicts with the [2009] Stipulation, and represents a willful breach of the Stipulation." (Compl., ¶ 49).

B.  Procedural History

On July 19, 2012, plaintiffs commenced this action against defendants pursuant to 42 U.S.C. §§ 1983 and 1985 and state law, alleging claims for, *inter alia*: (1) violations of their First Amendment right to petition local government for the redress of grievances (first claim for relief); (2) violations of their procedural and substantive due process rights under the Fifth and Fourteenth Amendments (second and third claims for relief, respectively); (3) violations of unspecified New York law, breach of the 2009 Stipulation and judgment declaring that plaintiffs' amended site plan application is approved by operation of law by virtue of the Planning Board's conduct in exceeding its power and discretion (first pendant state law claim); (4) judgment declaring: (a) that "certain actions and determinations by [defendants] as [sic] contrary to the laws of the State of New York, the zoning ordinances of the Town of Riverhead, and the intents of the law; * * * [b] that certain zoning decisions, actions, and determinations by the Defendants' [sic] as applied to the Plaintiffs' property, the Subject Premises, do not comply with the applicable law and procedures mandated by the laws of the State of New York and the Town Code of the Town of Riverhead," (Compl., ¶ 98); and (c) that plaintiffs' "proposed Clubhouse expansion and 78 Senior Golf villas as accessory uses to its [sic] legally permitted golf course use are allowed as permitted accessory uses," (Compl., ¶ 100) (second pendant state law claim); (5) judgment declaring "the legal rights of the Plaintiffs," (Compl., ¶ 105) (third pendant state

law claim); (6) violations of unspecified New York State Town Law (fourth and fifth pendant state law claims); and (7) breach of the 2009 Stipulation (sixth pendant state law claim). In addition to declaratory relief, plaintiffs seek compensatory damages in the amount of twenty-five million dollars ($25,000,000.00); reasonable attorneys' fees, costs and expert fees pursuant to 42 U.S.C. § 1988(b) and (c); judgment "[a]nnulling, rescinding, and vacating" the May 4, 2012 letter of Hanley, (Compl., p. 34); and an injunction "[e]njoining and restraining the Defendants * * * from interfering with, obstructing, or preventing the review and approval, of the Plaintiffs' site-plan [sic] application dated October 31, 2008." (Id.)

Pending before the Court is defendants' motion to strike certain paragraphs of the complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

II. DISCUSSION

A. Standard of Review

Rule 12(f) of the Federal Rules of Civil Procedure provides, in relevant part, that a court may strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter." "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 417 (S.D.N.Y. 2012) (quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.37[3] (3d ed. 2010)); see also Lynch v. Southampton Animal Shelter Foundation Inc., 278 F.R.D. 55, 63 (E.D.N.Y. 2011) ("'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues."

(quotations and citations omitted)). Although it is within a court's discretion whether to grant a Rule 12(f) motion, see Lynch, 278 F.R.D. at 63, "courts should not tamper with the pleadings unless there is a strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976); see also Lynch, 278 F.R.D. at 63, 69 (referring to Rule 12(f) as a "drastic remedy" and holding that "[m]otions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." (quotations and citations omitted)); Hargett v. Metropolitan Transit Authority, 552 F. Supp. 2d 393, 404 (S.D.N.Y. 2008) ("As a general rule, motions to strike are not favorably viewed, and will be granted only where there is a strong reason for so doing." (quotations and citations omitted)). The focus on a Rule 12(f) motion is whether, accepting the allegations in the complaint as true, "they are potentially relevant to the Plaintiff's claims and * * * unduly prejudicial to the Defendants." Lynch, 278 F.R.D. at 65.

A motion seeking to strike certain portions of a complaint as impertinent or immaterial "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky, 551 F.2d at 893; see also Anderson, 850 F. Supp. 2d at 417 (holding that the "touchstone" of a Rule 12(f) motion is "whether no evidence in support of an allegation would be admissible.") Ordinarily, courts should not "decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." Lipsky, 551 F.2d at 893. To prevail on a Rule 12(f) motion to strike material as impertinent or immaterial, "the movant must show '(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant.'" Lynch, 278 F.R.D.

at 63 (quoting Roe v. City of New York, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)); see also Hargett, 552 F. Supp. 2d at 404 (accord). "[A]llegations that 'supply background or historical material or other matter of an evidentiary nature' normally will 'not be stricken from the pleadings unless they are unduly prejudicial to the defendant.'" Lynch, 278 F.R.D. at 68 (quoting Impulsive Music v. Pomodoro Grill, Inc., No. 08-cv-6293, 2008 WL 4998474 (W.D.N.Y. 2008)). "Rule 12(f) should be construed strictly against striking portions of the pleadings on the grounds of immateriality, and if the motion is granted at all, the complaint should be pruned with care." Lipsky, 551 F.2d at 894.

B.  Challenged Paragraphs of the Complaint

Defendants seek to strike paragraphs 26-28, 30, 31, 38, 39, 47, 49, 50, 52, 56, and 112 through 117 of the complaint, all of which reference the parties' 2009 Stipulation, as immaterial and impertinent.[2] Defendants contend, *inter alia*, that the 2009 Stipulation contains additional

---

[2] Paragraph 26 relates, *inter alia*, to certain purported terms of the 2009 Stipulation and plaintiffs' purported compliance with the terms of the 2009 Stipulation. Paragraphs 27, 112 and 113 purportedly set forth certain terms of the parties' 2009 Stipulation. Paragraphs 28, 114 and 116 allege, *inter alia*, plaintiffs' compliance with the 2009 Stipulation. Paragraph 117 alleges that based upon defendants' "willful breach of the [2009] Stipulation, the Plaintiffs have suffered damages in an amount to be determined at trial." Paragraph 30 references, *inter alia*, the Town's "affirm[ance] and accept[ance]" of the sixty-two (62)-day period set forth in the 2009 Stipulation. Paragraph 31 refers to, *inter alia*, plaintiffs' counsel's January 28, 2010 letter indicating, *inter alia*, that plaintiffs' site plan application "had been revised to divide the plan into two phases pursuant to the parties' Agreement in the [2009] Stipulation" and that "this phase approach had been insisted upon by the Town, and made a specific condition of the [2009] Stipulation." Paragraph 38 refers to, *inter alia*, the Planning Board's April 5, 2011 letter to plaintiffs' counsel about the dedication of a parcel of land to the Town before any further review of plaintiffs' site plan application, "despite the Defendants' agreeing to the terms in the [2009] Stipulation." Paragraph 39 alleges, *inter alia*, that "[b]y letter, dated April 19, 2011, the Plaintiffs' counsel wrote to the Town Supervisor to complain about his recent public misstatements and negative comments about the size of the proposed clubhouse expansion,

13

language "absolutely prohibiting any future reference to or reliance upon [the] statement [that the subject premises was "permitted as a golf course use in an overlay district within a Residence B-80 (RB-80) zoning use district within the Town of Riverhead"] in support of any application of [plaintiffs] to expand any use on the subject Premises beyond the then-existing golf course use." (Affirmation of Dawn Thomas, Esq. ["Thomas Aff."], ¶ 4). Defendants further contend that the parties subsequently entered into a second Stipulation of Settlement dated April 27, 2010 ("the 2010 Stipulation") which, *inter alia*, "incorporated verbatim * * * the same prohibitions against the future use of the [statement that the subject premises was "permitted as a golf course use in an overlay district within a Residence B-80 (RB-80) zoning use district within the Town of

---

which dimensions had been included as part of the [2009] Stipulation." Paragraph 47 relates to, *inter alia*, the March 8, 2012 letter from plaintiffs' counsel to the Planning Board demanding the Planning Board's compliance with the 2009 Stipulation. Paragraph 49 alleges, *inter alia*, that "[t]he Planning Director's refusal to process the [plaintiffs'] site-plan [sic] application in 2012 directly conflicts with the [2009] Stipulation, and represents a willful breach of the Stipulation." Paragraph 50 of the complaint alleges, *inter alia*, that defendants' refusal to process plaintiffs' site plan application on grounds that the Planning Board had no jurisdiction to review it "represented the third time the Planning Department had refused to proceed with its statutory and contractual obligation to review and approve the site-plan [sic], in the face of the expressed agreement to do so in the May, 2009 Stipulation. * * * Once again the Defendants had received specific legal opinions to the contrary, and the Defendants had signed the 2009 Stipulation acknowledging just the opposite." Paragraph 52 of the complaint alleges, *inter alia*, that the Town "had agreed in the 2009 Stipulation to 'take action upon the application . . . for site-plan [sic] approval for the clubhouse expansion,' and that 'the Town of Riverhead agreed that it will not take any action that obstructs the timely completion of the clubhouse expansion process.' Yet, three years later it was refusing to make a decision, * * *." Paragraph 56 of the complaint alleges, *inter alia*, that "Defendants are well aware of * * * their agreements made in, and obligations under, the [2009] Stipulation, * * *. The Defendants have been quick to act to complain about the Plaintiffs' alleged noncompliance with their obligations under the [2009] Stipulation, while they themselves have consistently and willfully ignored their obligations thereunder." Paragraph 115 of the complaint alleges, *inter alia*, that "[t]he Planning Board has failed, and is now refusing, to approve the Plaintiffs' Amended Site-Plan [sic] Application although its time to act under state law, the Town Code, and the [2009] Stipulation has long since expired."

Riverhead"], in connection with any applications to expand the uses of the subject Premises." (Thomas Aff., ¶¶ 5-6). According to defendants, plaintiffs' references to the 2009 Stipulation in the challenged paragraphs of the complaint "constitute a clear, blatant and uncontestable violation of the terms of the 2009/2010 Stipulations, whose entire purpose and intention was to prohibit precisely such attempted reliance on the part of plaintiffs herein." (Thomas Aff., ¶ 7). Defendants submit copies of both Stipulations for consideration by the Court.

Initially, defendants' reliance on additional language in the 2009 Stipulation and the 2010 Stipulation, as well as the other documents attached to their reply papers, is improper on a Rule 12(f) motion to strike, which focuses solely on the allegations in the pleadings. See Corley v. Jahr, No. 11 Civ. 9044, 2012 WL 4888303, at * 2 (S.D.N.Y. Oct. 4, 2012), report and recommendation adopted by 2012 WL 6187076 (Dec. 12, 2012) ("In deciding a motion to strike, a court will not consider matters outside the pleadings * * *." (quotations and citation omitted)); Paretti v. Cavalier Label Co., Inc., 702 F. Supp. 81, 85 (S.D.N.Y. 1988) ("[E]xtrinsic evidence * * * cannot be considered in a true motion to strike."); U.S. Football League v. National Football League, 634 F. Supp. 1155, 1165 (S.D.N.Y. 1986) ("[O]n a Rule 12(f) motion, matter outside the pleadings normally is not considered."(quotations and citations omitted)).

In any event, although the language in the 2009 Stipulation upon which plaintiffs heavily rely in framing their complaint may ultimately not be admissible at trial, it cannot be said at the pleadings stage that such statements are immaterial or impertinent to the disputed issues in this action. Although "[s]ettlement agreements, even those approved by court order, have served as targets of successful motions to strike," Dent v. United States Tennis Association, Inc., No. CV-08-1533, 2008 WL 2483288, at * 2 (E.D.N.Y. June 17, 2008); see also In re Merrill Lynch &

15

Co., Inc. Research Reports Securities Litigation, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("Second Circuit case law makes it clear that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure."), in such cases, the allegations concerning the settlement agreements were being "used as substantive evidence of previous wrongdoing in a subsequent litigation." Dent, 2008 WL 2483288, at * 2 (citing cases). Settlement agreements and consent decrees may be admissible "to prove matters other than the truth of the allegations that led to the settlements, including such issues as knowledge, motive, and intent." Id. (citing cases); see also Waterford Township Police & Fire Retirement System v. Smithtown Bancorp, Inc., No. 10-cv-864, 2013 WL 1345086, at * 6 (E.D.N.Y. Mar. 29, 2013); Fed. R. Evid. 408(b). Plaintiffs are not relying upon the language in the 2009 Stipulation "as proof of the truth of the matters that led to the settlement agreement," id., i.e., that plaintiffs committed the noise violations for which the Town commenced the settled action against plaintiffs. To the extent that plaintiffs rely upon the language in the 2009 Stipulation to prove the truth of the underlying factual matters recited therein, e.g., to prove that the subject premises was "permitted as a golf course use in an overlay district within a Residence B-80 (RB-80) zoning use district within the Town of Riverhead," the 2009 Stipulation would not be admissible at trial for that purpose. However, it cannot be said at this early stage in the litigation that the 2009 Stipulation would not be admissible for some other permissible purpose, i.e., to establish defendants' knowledge, motive or intent. Indeed, since plaintiffs assert a pendant state law claim for breach of the 2009 Stipulation, the language of the

16

2009 Stipulation is clearly relevant to that claim at the very least.[3]

Evidentiary questions, such as the admissibility of certain evidence at trial, "should especially be avoided at such a preliminary stage of the proceedings[] [because] [u]sually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." Lipsky, 551 F.2d at 893. The Court is not prepared at this early stage in the litigation to rule upon the admissibility or inadmissibility of any evidence at trial or to interpret the parties' intent in drafting the 2009 and 2010 Stipulations. Such determinations are more properly made upon a motion *in limine* pursuant to Rules 402 and 403, or any other appropriate Rule, of the Federal Rules of Evidence prior to trial, or upon a motion for summary judgment. See, e.g. U.S. Football League, 634 F. Supp. At 165-66; Avnet, Inc. v. American Motorists Ins. Co., 684 F. Supp. 814, 817 (S.D.N.Y. 1988). "[D]efendants' argument is simply premature" at this stage of the proceedings. Fitzpatrick v. American Intern. Group, Inc., No. 10 Civ. 142, 2013 WL 1311029, at * 2 (S.D.N.Y. Mar. 20, 2013).[4]

Furthermore, defendants have not demonstrated any undue prejudice to them resulting from the presence of the challenged paragraphs in the complaint. See, e.g. Fitzpatrick, 2013 WL 1311029, at * 2 (denying motion to strike, *inter alia*, where the defendants "fail[ed] to show that

---

[3] Defendants have not sought dismissal of the breach of the 2009 Stipulation claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief based upon the language they assert precludes plaintiffs' reliance on the 2009 Stipulation.

[4] To the extent defendants argue that plaintiffs' reliance upon the challenged language in the 2009 Stipulation constitutes a breach of the parties' 2009 and 2010 Stipulations, or that plaintiffs' omission of certain critical facts in the complaint "borders on the sanctionable," (Thomas Reply Aff., ¶ 10), they are free to assert any appropriate counterclaims against plaintiffs in their answer to the complaint and/or to seek sanctions pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure.

the mere presence in the amended complaint of the allegations that they have targeted is prejudicial to them.") Accordingly, and since motions to strike are disfavored in this Circuit, defendants' motion to strike certain paragraphs of plaintiffs' complaint is denied without prejudice to raising the issue of the admissibility of the 2009 Stipulation upon any appropriate motion following the close of discovery in this action.

III. CONCLUSION

For the reasons set forth above, defendants' motion to strike certain paragraphs of the complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure is denied without prejudice to raising the issue of the admissibility of the 2009 Stipulation upon any appropriate motion following the close of discovery in this action.

The parties are directed to appear, with authority or with individuals with authority to settle this matter, before me in Room 1010 of the Central Islip Courthouse, located at 100 Federal Plaza, Central Islip, New York, for an initial conference in this matter on **July 30, 2013 at 11:15 a.m.**

SO ORDERED.                                s/ Sandra J. Feuerstein

                                           Sandra J. Feuerstein
                                           United States District Judge
Dated: July 18, 2013
       Central Islip, New York